1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KAREN RUTH DAW,

                     Plaintiff,

  v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                   Defendant.

3:17-cv-00402-LRH-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

10

11

12

13

14

15

      This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand (ECF No. 10), defendant's cross-motion to affirm (ECF No. 12), and plaintiff's reply (ECF No. 17).  For the reasons set forth herein, the court recommends that plaintiff's motion to remand (ECF No. 10) be granted.

16

### I.      FACTUAL AND PROCEDURAL BACKGROUND

17

18

19

20

21

      On October 28, 2012, Karen Ruth Daw ("plaintiff") protectively filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of May 28, 2007.  (Administrative Record ("AR") 81, 247, 293.)  The Social Security Administration initially denied plaintiff's application on September 9, 2013, and upon reconsideration on July 9, 2014.  (*Id.* at 123-26, 133-35.)

22

23

24

25

26

      On February 3, 2016, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Janice E. Shave.  (*Id.* at 55–80.)  Linda Ferris, a vocational expert ("VE"), also appeared at the hearing.  (*Id.* at 58.)  At the hearing, plaintiff amended her onset date to October 28, 2011.  (*Id.* at 59.)  The ALJ issued a fully favorable decision on February 12, 2016.  (*Id.*)

27

28

      However, on February 19, 2016, plaintiff again amended her alleged onset date to May 28, 2011 "due to eligibility in back pay."  (*Id.* at 288.)  The ALJ vacated the earlier decision.  (*Id.*

1   at 121.)   On February 29, 2016, the ALJ issued a partially favorable decision, finding that

2   plaintiff was not disabled prior to May 7, 2014, but became disabled on that date and continued to

3   be disabled through the date of the decision.   (*Id* 18-34.)   Plaintiff appealed, and the Appeals

4   Council denied review on May 16, 2017.   (*Id.* at 1-6.)   Accordingly, the ALJ's decision became

5   the final decision of the Commissioner ("defendant").   42 U.S.C. § 405(g) (2012).

6          Having exhausted all administrative remedies, plaintiff filed a complaint for judicial

7   review on June 28, 2017, (ECF No. 1), and a motion for remand on November 13, 2017 (ECF No.

8   10.)   Defendant filed a cross-motion to affirm (ECF No. 13), and plaintiff replied (ECF No. 17.)

9   This report and recommendation follows.

10                          **II.     STANDARD OF REVIEW**

11         The initial burden of proof to establish disability in a claim for SSDI benefits rests upon

12  the claimant.   *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).   To satisfy this burden, the

13  claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

14  any medically determinable physical or mental impairment which can be expected . . . to last for a

15  continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

16         This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

17  the claimant has exhausted all administrative remedies.   *See Brewes v. Comm'r of Soc. Sec.*

18  *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).   The court must affirm the ALJ's decision

19  unless it rests on legal error or is unsupported by substantial evidence in the administrative

20  record.   *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

21  ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

22  evidence, shall be conclusive.").   The substantial evidence standard is not onerous.   It is "more

23  than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

24  mind might accept as adequate to support a conclusion."   *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

25  Cir. 2012) (internal quotation omitted).

26         Although the ALJ need not discuss every piece of evidence in the record, she cannot

27  ignore or omit evidence that is significant or probative.   *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

28  Cir. 2012).   The ALJ's discussion must adequately explain the decision in light of such evidence.

1  "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

2  evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

3  discussing rejection of lay testimony).  The district court's review is thus constrained to the

4  reasons asserted by the ALJ.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

5        To determine whether substantial evidence exists, the court must look at the record as a

6  whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

7  affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

8  *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted).  Where "the evidence is

9  susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

10  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is

11  responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

12                              **III.     DISCUSSION**

13  **A.     SSDI claims are evaluated under a five-step sequential process.**

14        The Commissioner follows a five-step sequential process for determining whether a

15  claimant is "disabled" for the purposes of SSDI and SSI.  20 C.F.R. §§ 404.1520(a)(4), 414.920;

16  *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one directs the ALJ to determine

17  whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).

18  If so, the claimant is not disabled and the Commissioner denies the claim.  *Id.* § 404.1520(b).

19        The second step requires the ALJ to determine whether the claimant's medically

20  determinable impairment is "severe."  *Id.* § 404.1520(a)(4)(ii).  "Severe" impairments are those

21  that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id.* §

22  404.1520(c).  Step two is "a *de minimis* screening device [used] to dispose of groundless claims,"

23  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996), and an ALJ may find that a claimant lacks a

24  medically severe impairment or combination of impairments only when his conclusion is "clearly

25  established by medical evidence."   SSR 85-28, 1985 WL 56856 at *3 (Jan 1. 1985).   The

26  Commissioner will deny the claim if the claimant lacks a severe impairment or combination of

27  impairments.  *Id.*

28

At step three, the claimant's impairment is compared to the impairments listed in the Agency's regulations. *Id*. § 404.1520(a)(4)(iii); *see also id*. Pt. 404, Subpt. P, App. 1 ("List of Impairments"). The List of Impairments "define[s] impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). However, for an impairment to match a listing, "it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (emphasis in original).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. § 404.1520(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

In making the step four determination, the ALJ considers the claimant's RFC and the physical and mental demands of the work previously performed. 20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In evaluating the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 404.1545(a)(3).

The ALJ is not, however, required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-step inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July

2, 1996).   First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted).   Second, where the first test is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id.*

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).   The ALJ must therefore cite to the record and discuss specific evidence therein.   *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).   "[S]imply reciting the medical evidence in support of his or her [RFC] determination" will not suffice. *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015).   The focus, however, is ultimately upon the reviewing court.   The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'"   *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis.").   Medical opinions are also probative evidence when weighing the credibility of subjective complaints.   20 C.F.R. § 404.1529(c) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing claimant's credibility).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy.  20 C.F.R. § 404.1560(c).  There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work.  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).  The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert.  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  Where the grids do not direct a finding of disability, the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c).  If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, he or she is not disabled.  20 C.F.R. § 404.1566.  Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits.  *Id*. § 404.1520(g).

**B.     The ALJ followed the five-step process and concluded that plaintiff's impairments were not severe prior to May 7, 2014, but that plaintiff was disabled beginning on that date.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above.  The ALJ first determined that plaintiff had not engaged in substantial gainful activity since May 28, 2007, the alleged onset date.  (AR 21.)  At step two, the ALJ made two separate findings.

First, she found that plaintiff suffered from the following medically determinable impairments prior to May 7, 2014: bipolar disorder, anxiety, an unspecified sleep disorder, herpes, Hashimoto's thyroiditis, sarcoidosis, chronic kidney disease, alcohol and polysubstance abuse dependence, history of sexual abuse as a child, and obesity.  (*Id.*)  However, the ALJ found that plaintiff's impairments were not severe, either individually or in the aggregate, as they did not significantly limit plaintiff's ability to perform basic work-related activities for twelve consecutive months.  (*Id.* at 21-27.)  Because plaintiff did not have a severe impairment or

6

1    combination of impairments from her alleged onset date until May 7, 2014, the ALJ determined

2    that plaintiff was not disabled for during this time period under sections 216(i), 223(d), and

3    1614(a)(3)(A) of the Social Security Act.  20 C.F.R. §§ 416.1520(c), 920(c).  Thus, the ALJ

4    denied plaintiff's claims for SSDI benefits for this time period at step two of the sequential

5    process.  (*Id.* at 21-27.)

6        Second, the ALJ found that, beginning on May 7, 2014, plaintiff suffered from the

7    following medically determinable impairments that were sufficiently severe to proceed past step

8    two: bipolar II disorder, history of sexual abuse as a child, hypersomnia, obesity, and, finally, an

9    anxiety disorder not otherwise specified with features of posttraumatic stress disorder ("PTSD"),

10   obsessive compulsive disorder ("OCD"), and social phobia.  (*Id.* at 27); 20 C.F.R. 404.1520(c).

11   The ALJ briefly noted that these impairments are established by the medical evidence and more

12   than minimally limit plaintiff's ability to perform basic work activities.  (*Id.*)  Additionally, the

13   ALJ found that plaintiff suffered from a number of non-severe impairments.  (*Id.* at 27.)  These

14   impairments are not in dispute.  (*See* ECF No. 10.)  Nor do the parties dispute plaintiff's history

15   of sexual abuse as a child, hypersomnia, and obesity.  (*Id.*)

16       At step three, the ALJ concluded plaintiff did not have an impairment or combination of

17   impairments that met or medically equaled the severity of any listed impairment.  (*Id.* at 27.)

18       The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded

19   that plaintiff had the RFC to perform light work, with limitations.  (*Id.* at 28.)  In particular, the

20   ALJ found that plaintiff is: (1) incapable of climbing ladders, ropes and scaffolds, but can

21   occasionally climb stairs and ramps; (2) is incapable of driving for work; (3) must avoid all

22   exposure to unprotected heights and hazardous or moving machinery; (4) must avoid

23   concentrated exposure to direct sunlight and bright or flashing lights; (5) is capable of

24   understanding, remembering, and carrying out complex instructions, but is incapable of directing

25   others; and, finally, (6) is off task for twenty percent of the workday, in addition to regularly

26   scheduled breaks.  (*Id.*)

27       Next, the ALJ found that plaintiff's impairments could be expected to cause the symptoms

28   alleged, and that her statements regarding the intensity, persistence, and limiting effects of those

symptoms were generally credible.  (*Id*. at 28-29.)  Based on plaintiff's testimony, the evidence in the record, and the testimony of the VE, the ALJ concluded that plaintiff was not capable of performing her past relevant work as a software engineer.  (*Id.* at 37.)

Proceeding to step five, and relying on the testimony of the VE, the ALJ determined that plaintiff lacks work skills that are transferable to other occupations that require only a light exertional work RFC.  Given this limitation, and in consideration of plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff is precluded from meeting the exertional demands of any occupation existing in significant numbers in the national economy.  (*Id.* at 33.)  As such, Medical Vocational Rule 202.06 directed the ALJ to find plaintiff disabled.  (*Id.*)

Accordingly, the ALJ held that although plaintiff was not disabled between the alleged onset date and May 7, 2014, plaintiff became disabled on May 7, 2014 through the date of decision on February 29, 2016.

**C.**     **The ALJ properly evaluated the severity of plaintiff's mental and physical impairments.**

Because the ALJ found plaintiff disabled as of May 7, 2014, this appeal relates only to whether plaintiff was disabled as of the alleged onset date, May 28, 2007.  (ECF No. 10.)  Plaintiff argues that the ALJ erred in finding that plaintiff did not have a medically severe impairment, or combination of impairments, on four grounds: (1) the ALJ did not provide substantial evidence to support her determination that plaintiff's mental impairments were not severe prior to May 7, 2014; (2) the ALJ impermissibly discounted plaintiff's testimony regarding the pain, persistence, and limiting effects of her mental impairments; (3) the ALJ ignored an opinion from plaintiff's treating physician that plaintiff was disabled; and, (4) the ALJ failed to obtain the assistance of a medical advisor to help determine the precise onset date of plaintiff's disability.  (ECF No. 10 at 15.)  Plaintiff's arguments are discussed in turn.

**1.  Substantial evidence supports the ALJ's determination that plaintiff's mental impairments were non-severe prior to May 7, 2014.**

Pursuant to 20 C.F.R. § 404.1520a, ALJs use a special psychiatric review technique to evaluate the severity of a claimant's mental impairments.  The technique requires the ALJ to rate

the degree of the claimant's functional limitation in four areas: (1) activities of daily living;[1] (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) (effective June 13, 2011 to January 16, 2017).  If, applying the psychiatric review technique, the ALJ rates a claimant's degree of limitation as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will find that the claimant's mental impairment is not severe.  20 C.F.R. § 404.1520a(d)(1).  Significant limitations in these four areas must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."  42 U.S.C. § 423(d)(3). Diagnoses and observations of professional psychologists and psychiatrists are considered medically acceptable clinical and laboratory data. *See Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C. Cir. 1987); *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam).

In this case, the ALJ made explicit findings as to the four functional areas identified in section 404.1520a and concluded that plaintiff's "bipolar disorder and anxiety considered singly and in combination did not cause more than minimal limitations in [her] ability to perform basic mental work activities and was therefore non-severe."  (AR 26.)  Plaintiff's challenge focuses on the ALJ's determination that plaintiff's impairments only mildly limited her activities of daily living and her social functioning.  (ECF No. 10 at 13-15.)  Specifically, plaintiff argues that the ALJ improperly construed plaintiff's statements in her adult function report and her statements to the Consultative Examiner ("CE").  (*Id.*)  Defendants counter that the ALJ properly assessed plaintiff's admissions and supported her conclusion with the medical findings and opinions of the Consultative Examiner ("CE") and the State Agency Psychological Consultants ("PC").   (ECF No. 12 at 5.)

The court finds that the ALJ reasonably relied on plaintiff's adult function report and her admissions to the CE.  First, plaintiff's adult function report, submitted in July 14, 2013, is probative of the extent to which her activities of daily living are limited by her mental impairments.  (AR 26, 302-06.)    The functional report acknowledges that she prepared her own

---

[1]  This provision has since been amended to define the functional area as the ability to "understand, remember, or apply information."  20 C.F.R. § 404.1520a(c)(3) (effective Jan. 2017).

1   meals daily and did some household chores, including laundry, dish washing, sweeping, mopping,

2   and other cleaning.  (*Id.*)  The ALJ notes that plaintiff's statements to the CE are similar, adding

3   that plaintiff can dress and bathe herself and run errands.  (*Id.* at 26, 453-54.)  Both the functional

4   report and the CE exam record are also pertinent to the limitations on plaintiff's social

5   functioning, as plaintiff admits that she drives, reads as a hobby, can handle her finances, shops in

6   stores and online, picks up prescription medication, uses a social networking site, and speaks on

7   the phone regularly.  (*Id.* at 26, 302-06, 453-55.)

8           Furthermore, the ALJ properly based her determination on the psychological evaluations

9   of plaintiff's limitations that were conducted by the CE and the PCs.  On August 19, 2013, the CE

10  found that plaintiff was able to carry out simple, detailed, and even complex instructions, and

11  only mildly limited in the second and third functional areas.  (*Id.* at 25, 454-55.)   *Tonapetyan*,

12  242 F.3d at 1149 (holding that CE's opinion "constitutes substantial evidence, because it rests on

13  his own independent examination" of claimant).   The ALJ also supported her findings by

14  reference to the opinions of the PCs, who both found that although plaintiff suffered from

15  medically determinable impairments, she was not more than mildly impaired in the first three

16  functional areas. (AR 26-27, 82-92, 92-107); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996)

17  (findings of a non-treating, non-examining physician can amount to substantial evidence when

18  supported by other evidence in the record, such as findings of examining physicians).  The ALJ

19  properly gave the greatest weight to the report to the CE and the PCs because their evaluations

20  were consistent with the overall evidence.  (AR  25-27); 20 C.F.R.  404.1527(d)(4) (providing

21  that more weight is given to the opinion that is more consistent with the record as a whole).

22          In addition to relying on medical evidence, the ALJ properly discounted plaintiff's

23  symptom testimony, as discussed below.   Thus, the ALJ relied on substantial evidence in

24  determining that plaintiff's mental impairments were not severe for a portion of plaintiff's

25  proposed period of disability.  *Hoopai v. Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007).

26       **2.  The ALJ did not err in discounting plaintiff's subjective testimony.**

27          Plaintiff contends that the ALJ's reasons for discounting plaintiff's testimony were not

28  clear and convincing.  (ECF No. 10 at 10-14.)  The ALJ articulated two main reasons for her

1   adverse credibility finding of plaintiff: (1) plaintiff's reported daily activities are inconsistent with

2   her alleged limitations; and, (2) medical evidence in the record did not support plaintiff's

3   testimony as to the severity of her symptoms. (*See* AR 39–41). The court considers each in turn.

4       First, plaintiff's daily activities are a clear and convincing reason to find plaintiff less than

5   credible. ALJs must "be especially cautious in concluding that daily activities are inconsistent

6   with testimony about pain, because impairments that would unquestionably preclude work and all

7   the pressures of a workplace environment will often be consistent with doing more than merely

8   resting in bed all day." *Garrison*, 759 F.3d at 1016. Still, a claimant's daily activities may

9   support an adverse credibility finding where the activities are inconsistent with the claimant's

10  testimony of his or her disabling symptoms. *Orn*, 495 F.3d at 639.

11      At the hearing, plaintiff testified that she was unable to work from her alleged onset date

12  until May 7, 2014 due to her anxiety, which made it difficult for her to interact with other people,

13  and her bipolar disorder, which caused her difficulty in getting out of bed. (AR 22, 62, 63.)

14  Plaintiff did not attribute her inability to work to any other impairment. (*Id.* at 63.) However,

15  plaintiff reported and testified that, during this time period, she was able to perform self-care, care

16  for her pet, perform some household chores, prepare meals daily, drive, manage her finances,

17  shop for herself, socialize with friends and family, and get along with authority figures. (*Id.* at

18  23, 302-306, 450-55); 20 C.F.R. Pt. 404, Subp. P, App. 1 § 12.00C(1) (in considering the severity

19  of mental impairments, the category of activities of daily living includes cleaning, shopping,

20  cooking, maintaining a residence, and caring appropriately for grooming and hygiene). At the

21  February 3, 2016 hearing, plaintiff also noted that she occasionally takes the bus, will drive to

22  church twice a month, and speaks with her doctors at least weekly. (AR 68-72.)

23      The ALJ properly found that plaintiff's "reported activities demonstrate the [she] was less

24  limited than alleged," and thus, that her testimony may not be entirely accurate. (AR 23; *Molina*

25  *v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (finding that reported activities, including

26  socializing with family, attending church, shopping, and taking walks undermined plaintiff's

27  claims that her anxiety and panic attics were debilitating); *Nguyen v. Colvin*, 639 Fed. Appx. 510,

28  511 (9th Cir. 2016) (finding schizophrenia was non-severe prior to 1997 in part because husband

1    testified that claimant could perform "some household tasks").  Plaintiff maintains that her daily

2    activities are consistent with the alleged severity of her mental impairments because her mental

3    impairments are cyclical in nature, but, at best, the evidence here is susceptible to more than one

4    rational interpretation.  The court must uphold the ALJ's credibility finding.  *Lewis*, 498 F.3d at

5    911; *Orn*, 495 F.3d at 636 (conflicts between allegations and plaintiff's activities is a clear and

6    convincing reason to find plaintiff not fully credible).

7         Second, the ALJ's citation to the lack of strong support provided by the objective medical

8    evidence is a "clear and convincing" reason for discrediting plaintiff's testimony.  Based on the

9    totality of the medical evidence, the ALJ concluded that the evidence provided an insufficient

10   basis to find that plaintiff's mental impairments were as severe as she alleged. (AR 23-25.)

11   Despite plaintiff's symptom testimony, the ALJ found that her medical records from August 2011

12   to April 2013 "primarily consist of normal or relatively insignificant laboratory tests" and, aside

13   from her refilling her prescriptions and reporting her medical history, were "otherwise

14   unremarkable" with respect to her mental impairments.  (*Id.* at 24.)  From April 2013 to May 1,

15   2014, plaintiff attended medical appointments more frequently, but the ALJ highlighted the

16   positive impressions that the doctors and counselors perceived; plaintiff was described as

17   pleasant, friendly, appropriately dressed and groomed, able to maintain good eye contact, and

18   alert and oriented with appropriate insight and thinking.  (*Id.* at 23-25.)  Although a lack of

19   objective medical evidence cannot be the sole basis for discounting credibility, the ALJ properly

20   considered it alongside plaintiff's reported daily activities.  *Burch*, 400 F.3d at 681.

21        The ALJ's determination also relied on the clinical findings and medical opinion of the

22   CE, who performed a mental status examination on plaintiff and reviewed her medical records.

23   (AR 450-55.)  The CE opined that that plaintiff's mental impairments were not as limiting as she

24   alleged.  (*Id.*)  In addition, the ALJ cited the findings and opinions of the state agency PCs, wich

25   were consistent with the CE's findings.  (*Id.* at 14–17, 82-92, 92-107); *Rollins*, 261 F.3d at 857

26   (noting that an ALJ may consider medical opinions contradicting claimant's pain testimony when

27   assessing claimant's credibility).   Medical opinions that contradict a claimant's symptom

28   testimony constitute a clear and convincing reason to discount that testimony.    20 C.F.R. §

404.1529(c) (factors relevant to credibility include medical opinion); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing claimant's credibility).

Even if the ALJ's determination that plaintiff's testimony of her activities of daily living is not a clear and convincing reason to discount her symptom testimony supported by substantial evidence, the ALJ properly relied on inconsistencies with the objective medical evidence and the opinions of the CE and PCs. *Burch*, 400 F.3d at 681 (objective medical evidence is a clear and convincing reason to discount testimony when it is not the sole basis for doing so). Any error is harmless as it "does not negate the validity of the ALJ's ultimate conclusion that [plaintiff] was not credible." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Accordingly, because the ALJ's credibility finding is based upon clear and convincing reasons supported by substantial evidence, remand is not warranted. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

**3. The ALJ was required to obtain expert assistance to ascertain onset date**

Plaintiff argues that the ALJ erred in failing to properly develop the record to determine the onset date of her disability, as required by Social Security Ruling 83-20. (ECF No. 10 at 12.) The court agrees.

While disability claimants bear the burden of proof to show disability, *Ukolov v. Barnhardt*, 420 F.3d 1002, 1004 (9th Cir. 2005), ALJ's have an independent duty to fully and fairly develop the record and to ensure that the claimants interests are considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty extends to the ALJ's determination of a claimant's disability onset date, which "must have a legitimate medical basis." SSR 83-20. Specifically, "where a record is lacking and ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017) (internal quotation omitted) (noting that expert assistance is mandatory, not permissive, when onset date must be inferred); *Armstrong*, 160 F.3d at 590. The need for medical expert assistance is heightened when mental impairments are at issue because they "may manifest themselves over a period of time," making "the precise date of onset of a disabling

1    psychological impairment … difficult, or impossible, to ascertain." *Morgan v. Sullivan*, 945 F.2d

2    1079, 1081 (9th Cir. 1991) (*per curiam*).  In contrast, a medical expert's assistance is unnecessary

3    when "the onset of disabilities occurs all at once, and the date of onset is clear." *Deidrich*, 874

4    F.3d at 639.

5         Far from manifesting at a precise point in time, plaintiff's anxiety and bipolar disorder

6    pervade the record.  While plaintiff alleged an onset date of May 28, 2011, she reported severe

7    depression and symptoms of bipolar disorder as early as 2004 (AR 497, 614, 679), and received

8    psychiatric treatment for her bipolar disorder as early as 2006.  (*Id.* at 386-93, 403).  In 2007,

9    plaintiff was kicked in the head by a horse.  Although one physician noted that "the exact nature

10   of the [head] injury is unknown," (*id.* at 546), it appears to have aggravated her mental health

11   impairments.  (*Id.* at 679, 688.)  On May 6, 2009, plaintiff's treating physician, Dr. Elizabeth

12   Burnell M.D., opined that plaintiff was "unable to work at any job due to her bipolar disorder."

13   (*Id.* at 730-31.)  The ALJ discussed and discounted the medical records from 2006-2011, but

14   wholly ignored the opinion of Dr. Burnell.  (*Id.* at 24.)

15        Further complicating matters, the ALJ noted that there is a gap in the medical record from

16   August 2011 to April 2013.  During this time plaintiff established care at a hospital to receive an

17   influenza shot and refilled her prescriptions for her bipolar disorder (*id.* at 408-11), but did not

18   seek out psychiatric care.  (*See id.* at 403-448.)  The ALJ asserts that plaintiff's "otherwise

19   unremarkable" medical records from this time do not indicate that plaintiff's onset date occurred

20   at this time.  (*Id.* at 24.)  Instead, the ALJ found that plaintiff's disability began on May 7, 2014.

21   (*Id.* at 29-30.)  However, the only event that occurred on that date is plaintiff's visit with Dr.

22   Levenson, Ed.D, wherein Dr. Levenson opined that plaintiff was unable to work due to her

23   mental impairments.  (*Id.*; AR 534-38.)   Curiously, the ALJ assigned little weight to Dr.

24   Levenson's medical source statement, and explicitly rejected Dr. Levenson's opinion of disability

25   and medical findings of limitation.  (AR 30) ("[T]he clinical findings, the longitudinal medical

26   records, and the claimant's activities of daily living show the claimant is less limited that

27   determined by Dr. Levenson.")  As such, it is unclear what occurred on this date to drive the

28   ALJ's determination.

1    Given that medical records and testimony show plaintiff's bipolar disorder and anxiety

2    existed in some form as far back as 2004, the gap in the medical record, and the absence of a

3    conspicuous precipitating event to which plaintiff's impairments could fairly be attributed, the

4    record is ambiguous as to the onset date.  Therefore, the ALJ was required to obtain the assistance

5    of a medical expert.  The court recommends remand for this purpose.

6    **4.  The ALJ was required to consider a medical opinion of disability**

7    Finally, plaintiff contends that the ALJ erred by failing to consider Dr. Burnell's medical

8    opinion from May 2009 that plaintiff was disabled.  SSR 96-5p requires that "adjudicators must

9    always carefully consider medical source opinions about every issue, including opinions that are

10   reserved to the commissioner."  SSR 96-5p, 1996 WL 374183.  SSR 96-5p does not limit this

11   mandate to medical source opinions rendered after a plaintiff's alleged onset date, and defendants

12   fail to provide any authority to support this proposition.  *See id.* ("[O]pinions from any medical

13   source on issues reserved to the Commissioner must never be ignored.")  Consequently, the

14   ALJ's failure to consider and weigh Dr. Burnell's opinion was clear error.

15   In the alternative, defendants argue that the ALJ's decision should be affirmed because

16   her error was harmless.  Error is harmful unless it is "inconsequential to the ultimate nondisability

17   determination."  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2006) ("[A] reviewing court

18   cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ,

19   when fully crediting the testimony, could have reached a different decision.").  Here, the ALJ's

20   error was harmful because it cannot be said that "no reasonable ALJ" would have found that

21   plaintiff was not disabled from the alleged onset date to May 7, 2014 while simultaneously "fully

22   crediting" Dr. Burnell's medical testimony.  *Id.* at 1173.  The ALJ must consider and weigh Dr.

23   Burnell's medical opinion and articulate her reasoning.

24   While the court has found substantial evidence to uphold the ALJ's determination that

25   plaintiff's disability was nonsevere prior to May 7, 2014, this is only an artifact of the lenient

26   substantial evidence standard.   Substantial evidence is "more than a mere scintilla but less than a

27   preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

28   support a conclusion."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation

1    omitted).  Indeed, Dr. Burnell's opinion may induce the ALJ to find that plaintiff was disabled

2    prior to May 7, 2014.  In such an instance, the court is bound to accept her determination so long

3    as she provides "more than a scintilla of evidence" to support her determination.  *Id.*

4         **5.   The record warrants remand for further proceedings.**

5         A district court has the discretion to remand for an immediate award for benefits where all

6    three prongs of the credit-as-true test are met.  *Garrison*, 759 F.3d at 1020.  Under that test, (1)

7    the record must be fully developed, such that further administrative proceedings would serve no

8    purpose; (2) the ALJ must have failed to articulate legally sufficient reasons for rejecting medical

9    opinion evidence or claimant's testimony; and (3) if on remand the rejected evidence were

10   credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  Even in the "rare

11   circumstances" where the test is satisfied, a court may find that remand for further proceedings is

12   appropriate.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

13        As discussed above, medical expert assistance is necessary to determine the date on which

14   plaintiff became disabled by her anxiety and bipolar disorder.  Additionally, further proceedings

15   are appropriate to permit the ALJ to address Dr. Burnell's medical opinion, which she need not

16   credit as true.  SSR 96-5p ("[T]reating source opinions on issues reserved to the Commissioner

17   are never entitled to controlling weight or special significance … [but] must never be ignored

18   …."); *see Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394 (9th Cir. 1984) (the ALJ

19   is required to "explain why significant probative evidence has been rejected").  Because there are

20   outstanding issues that must be resolved before a final disability determination can be made, it is

21   appropriate to remand this case for further proceedings.  *Treichler*, 775 F.3d at 1105.

22                                     **IV. CONCLUSION**

23        The court concludes that substantial evidence in the record supported the ALJ's step two

24   determination that plaintiff's anxiety and bipolar disorders were nonsevere from the alleged onset

25   date until May 7, 2014.  In making this determination, the ALJ gave specific, clear and

26   convincing reasons for partially discounting plaintiff's subjective symptom testimony.  However,

27   the court finds that the medical evidence of the onset of plaintiff's disability was sufficiently

28   ambiguous to require the ALJ to obtain the assistance of a medical expert.  Additionally, the

ALJ's failure to consider the opinion from Dr. Burnell, plaintiff's treating physician, constituted harmful error. Thus, the court recommends that plaintiff's motion for remand be granted for the purpose of requiring the ALJ to consider Dr. Burnell's opinion and to enlist the assistance of a medical expert to determine the onset date of plaintiff's disability.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (ECF No. 10) be **GRANTED** and defendant's cross-motion for summary judgment (ECF No. 12) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:** June 7, 2018.

**UNITED STATES MAGISTRATE JUDGE**